IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MISSISSIPPI VALLEY TITLE INSURANCE COMPANY, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> MARION BANK AND TRUST COMPANY, and J. GARRISON THOMPSON, <br><br> Defendants. | CIVIL ACTION NO. 2:11-cv-00538-WS-C |

**PLAINTIFF'S RESPONSE TO DEFENDANT MARION BANK AND TRUST COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Wells Fargo Bank, N.A., in response to the Motion for Summary Judgment of Defendant, Marion Bank and Trust Company ("Marion Bank") (Doc. 47) and Memorandum of Law in support thereof (Doc. 48) states that Marion Bank's motion is due to be denied because a genuine issue of material fact exists that makes it inappropriate to grant summary judgment as requested by Marion Bank.[1]  In further support of its Response, Wells Fargo states the following:

The issue presented by Marion Bank in its motion for summary judgment is whether Marion Bank knew about the CTX mortgage at the time Marion Bank

---

[1] Marion Bank's Motion for Summary Judgment is directed toward "Plaintiffs' claims against it." (Doc. 48, p. 1.) Only Wells Fargo asserts claims against Marion Bank. Mississippi Valley and Old Republic do not.

loaned an additional $200,000.00 to Richard and Elizabeth Rabb in November 2003. Marion Bank agrees (Doc. 48, p. 4) that if it knew of the CTX mortgage, then Marion Bank was not protected in making future advances under the dragnet clause in its 1997 mortgage. *Mobley v. Brundidge Banking Co., Inc.*, 347 So. 2d 1347 (Ala. 1977); *Hampton v. Gulf Federal Savings & Loan Association*, 287 Ala. 172, 249 So. 2d 829 (1971). These cases, along with *Farmer's Union Warehouse Co. v. Barnett Bros.*, 137 So. 176 (Ala. 1931) cited by Marion Bank actually equate "inquiry notice" as opposed to "constructive notice" with "knowledge."

If Marion Bank had knowledge (defined to include "inquiry notice"), Wells Fargo Bank, as current assignee and holder of the CTX mortgage, is entitled to the surplus received by Marion Bank upon foreclosure, over and above the pre-November 2003 Rabb indebtedness to Marion Bank. For the calculation of the amount of the surplus being claimed by Wells Fargo, please refer to Plaintiffs' Second Supplemental Initial Disclosures, exhibit 30 to Plaintiffs' Motion for Summary Judgment. (Doc. 66-30.)

Marion Bank asserts in its brief (Doc. 48, p. 2) that it did not have knowledge of the CTX mortgage; but, as will be demonstrated below, there is a genuine issue of material fact as to whether Marion Bank had knowledge.

Marion Bank is a rural community bank based in Marion, Alabama, with one branch in Selma, Alabama. Conrad Taylor is the President of Marion Bank,

but he was also the bank's loan officer with respect to the loan transactions with the Rabbs, including the April 1997 transaction and the November 2003 transaction. (Doc. 66-3, pp. 4 and 7.)

Files produced by Marion Bank contain credit applications and personal financial statements from which a fact-finder can infer that Marion Bank had knowledge before November 2003 of the CTX mortgage on the homeplace owned by the Rabbs and ultimately bid in at foreclosure by Marion Bank. Financial statements are a material part of the loan approval process; the submission of a false financial statement to a bank is a federal felony. *See, United States v. Crisp,* 454 F.3d 1285, 1286-87 (11th Cir. 2006). In his deposition, Conrad Taylor acknowledged the existence of loan customer disclosures as follows:

> Q. All right. Show you what's been marked as Exhibit 34. That is a --
>
> A. Credit application.
>
> Q. Is that a Marion Bank form?
>
> A. I'm sorry?
>
> Q. Is that a Marion Bank form?
>
> A. It is.
>
> Q. Turning to the second page of this, the date of it is **February 11th, 2003**. You see that at the bottom?
>
> A. It is.

Q. This is an application in connection with the $200,000 loan that was made in November of 2003?

A. This application is February of 2003.

Q. Okay. So it's earlier. All right. Now, going up where it says outstanding debts, you can see where the Rabbs say that they have a first home mortgage with Washington Mutual. You see that?

A. I do.

Q. Okay. Exhibit 35 is another financial statement that was produced by Marion Bank. Is that a Marion Bank form as well?

A. It is.

Q. Turning over to the second page, you see that's dated in 2003, but we don't see a specific date on it, do we?

A. No.

Q. Okay. And going up to the real estate owned section, it indicates that at 916 Selma, Alabama, there is a mortgage with a balance due of $230,000 for 15 years to Washington Mutual. You see that?

A. I do. It doesn't say whether it's a first or second or third.

Q. But you can see that there is a mortgage on their home place for $230,000 to Washington Mutual? You can see that --

A. Yes.

* * *

Q. Okay. I'm showing you what's been marked as Plaintiff's Exhibit 36, which is another financial statement. If you

>       turn over to the second page, you can see this is dated
>       October 27, 2003.
>
> A.    Yes.
>
> Q.    And going up again to the real estate owned section, the
>       very first entry shows a mortgage on the home place of
>       $220,000?
>
>              MR. REEVES:     Object to the form.
>
> Q.    You can see 916 County Road 269 --
>
> A.    I'm sorry?
>
> Q.    Okay. Do you have this section?
>
> A.    916 County Road?
>
> Q.    Right.
>
> A.    Okay.
>
> Q.    And then it shows that there's a mortgage with a balance
>       due of 220 with a maturity of 2018. You see that?
>
> A.    It doesn't say to whom.
>
> Q.    Excuse me. What?
>
> A.    It doesn't say to whom payable.
>
> Q.    Right. It doesn't. But it does say there's a mortgage,
>       right?
>
> A.    (Witness nods head.)

(Doc. 66-3, pp. 19-20, emphasis added.)

Copies of exhibits 34, 35 and 36 to Conrad Taylor's deposition are attached hereto as Exhibits A, B and C, respectively. The "Washington Mutual" mortgage identified by the Rabbs in their loan application (Ex. A hereto) to Marion Bank and their financial statements (Ex. B and C hereto) is the "CTX mortgage." This was a "MERS" mortgage being serviced by Washington Mutual in 2003. (Doc. 66-5, pp. 19 and 23.) What is important is that Marion Bank knew, before the closing on November 13, 2003 (Doc. 66-18) of another mortgage describing property on which it proposed to lend "new money," not necessarily that it knew every detail. *Mobley v. Brundidge Banking Co., Inc.*, 347 So. 2d at 1349-50.

Even though these documents, together with Mr. Taylor's testimony, are sufficient to create an issue of fact about whether Marion Bank had knowledge of the CTX mortgage when it loaned another $200,000.00 to the Rabbs in November 2003, there is still other evidence from which reasonable inferences can be drawn that Marion Bank had knowledge of another existing mortgage on the Rabb homeplace.

On motion for summary judgment, all inferences drawn from the evidence must be viewed in a light most favorable to the nonmoving party. *Mize v. Jefferson City Board of Education*, 93 F.3d 739 (11th Cir. 1996). Summary judgment may be inappropriate even where parties agree on the basic facts, but disagree about factual inferences that should be drawn from the facts. If

reasonable minds might differ on inferences arising from undisputed facts, then summary judgment should be denied. *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294 (11th Cir. 1983).

On November 6, 2003, only days before Marion Bank advanced new funds to the Rabbs, Defendant, J. Garrison Thompson, wrote Conrad Taylor a letter enclosing a Mississippi Valley title commitment to insure, and a release to be executed by Mr. Taylor, of the April 2, 1997 Marion Bank mortgage. So, Mr. Taylor received the title commitment along with a release request. (Doc. 66-3, pp. 16-17; exhibit D hereto.) Why would Thompson be sending a proposed release of the 1997 mortgage to Taylor if there was not another lien which was impaired by the 1997 mortgage? From this and from its own loan files Marion Bank had to know another mortgage was out there, even if not listed on the title insurance commitment.

But the story does not stop here; the November 6th letter was followed by another on November 20, 2003 from Thompson to Taylor, enclosing the Mississippi Valley title insurance policy that lists the CTX mortgage as an exception. Thompson's letter states "you will note that the property listed as Exhibit 'B' is second and subservient to the mortgage of CTX Mortgage Company. I sent you a release in my letter to you of November 6, 2003 but have not received the release as the date of drafting of the title policy." (Exhibit E hereto.) Marion

7

Bank (as set out below) has never taken issue with the listing of the CTX mortgage on the title policy; again, a reasonable inference can be drawn that Marion Bank knew about the CTX mortgage before Marion Bank loaned the additional $200,000.00 to the Rabbs.

After the Rabbs had defaulted on all of their loans, Henry Pitts, who is one of Thompson's attorneys of record in this case but who is also listed as a witness by Wells Fargo, and who may have been acting as counsel for Elizabeth and Richard Rabb at the time, wrote a letter to Allen Reeves, counsel for Marion Bank, dated July 19, 2010, prior to the foreclosure in September 2010. Mr. Pitts wrote:

> I want to point out to you that we still have the problem with Marion Bank and Trust contending that they have the first mortgage on the marital home and the acreage surrounding the same. It is our position that Marion Bank and Trust misrepresented facts to Gary Thompson when he was representing the Rabbs on the mortgage to Wells Fargo. Gary Thompson would have never issued a title policy without representations being made that Marion Bank and Trust was going to satisfy or subordinate the Rabbs' mortgage to them. I also want to point out to you that in a conference I had with Mr. Conrad Taylor, he acknowledged at that time that Marion Bank and Trust Company's mortgage was secondary to the Wells Fargo mortgage on the Rabb marital home and the adjoining acreage. If Marion Bank and Trust Company goes forward with the mortgage foreclosure, we are contemplating filing a lawsuit on behalf of Mrs. Rabb for the wrongful foreclosure of this mortgage.

(Doc. 66-3, p. 15; exhibit F hereto.)

Mr. Thompson has also testified that he has reason to believe Marion Bank knew of the CTX mortgage before it closed the $200,000.00 loan.  He pointed out that even though he failed to list the CTX mortgage on the title commitment in November 2003, he did note it as an exception on the final title insurance policy, and he "never heard any complaint from Mr. Taylor or Marion Bank about the existence of that mortgage on the policy."  (Doc. 66-1, p. 18.)

That one witness insists on a fact is not conclusive when contradicted by other evidence including permissible inferences.  *United States, v. Cochrane,* 274 Fed. Appx. 746, 747 (11th Cir. 2008); *Central Truck Lines, Inc. v. Lott,* 249 F.2d 722, 724-25 (5th Cir. 1957).  Accordingly, there being a genuine issue of material fact regarding the prior knowledge by Marion Bank of the CTX mortgage, Marion Bank's Motion for Summary Judgment is due to be denied.

    Respectfully submitted,

    *s/ Charles C. Simpson, III*
    Charles C. Simpson, III (SIMPC6136)

    *s/ Lawrence J. Seiter*
    Lawrence J. Seiter  (SEITL4720)
    Attorneys for Plaintiffs, Mississippi Valley Title Insurance Company, Old Republic National Title Insurance Company, and Wells Fargo Bank, N.A.

OF COUNSEL:

JOHNSTONE, ADAMS, BAILEY,
GORDON & HARRIS, L.L.C.
Post Office Box 1988
Mobile, Alabama 36633
Telephone:  (251) 432-7682
Facsimile:  (251) 432-2800
ccs@johnstoneadams.com
ljs@johnstoneadams.com


## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of August, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to the following:

B. Kincey Green, Jr., Esq.
Allen S. Reeves, Esq.
Reeves & Stewart, P.C.
Post Office Box 447
Selma, Alabama 36702-0447

Philip Henry Pitts, Esq.
Pitts, Pitts & Williams
Post Office Box 527
Selma, Alabama 36702

James B. Rossler, Esq.
Post Office Drawer 2164
Mobile, Alabama 36652


                                            *s/ Lawrence J. Seiter*

818477.doc