IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MISSISSIPPI VALLEY TITLE INSURANCE COMPANY and WELLS FARGO BANK, | * * * * |
| Plaintiffs, | * * |
| v. | * CIVIL ACTION NO.: 2011-0538-WS-C * |
| MARION BANK AND TRUST COMPANY and J. GARRISON THOMPSON, | * * * * |
| Defendants. | * |

**DEFENDANT J. GARRISON THOMPSON'S RESPONSE
IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE**

Plaintiffs have moved (doc. 77) to strike certain portions of the Affidavit of J. Garrison Thompson that was filed in support of his motion for summary judgment. [Doc. 52-1]. Because Mr. Thompson's affidavit testimony lies comfortably within the ambit of Rule 701, Fed.R.Evid., plaintiffs' motion to strike is due to be denied.

J. Garrison Thompson is an attorney and is, of course, one of two defendants sued in this action. Rule 26(a)(2)(A) provides:

> In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

Fed.R.Civ.P. 26(a)(2)(A).

Rule 701 of the Rules of Evidence provides that if a witness is not testifying as an expert, as is the case here for Mr. Thompson, that the witness may testify "in the

form of an opinion that is (a) rationally based on the witness's perception, (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.  Fed.R.Evid. 701.  Here, Mr. Thompson's affidavit testimony is based upon his standard procedures for searching title and issuing title commitments and policies and his forty-nine years of experience practicing law.  His opinions are based upon his knowledge of how things work gained through the experience of having worked under the same contract with Mississippi Valley since 2000.

   Mr. Thompson's affidavit testimony survives a Rule 701 assessment because his testimony is rationally based on the standard procedures that he followed in his office and what he, as a lawyer under contract with Mississippi Valley, was required to do when he searched title and issued title commitments and policies.  It is his particularized knowledge which he has garnered through his forty-nine years of lawyering that is helpful to a clear understanding of his testimony and to determining the facts at issue.  As such, Mr. Thompson's affidavit testimony lies comfortably within the ambit of Rule 701.  *See Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003) (holding that Rule 701 permits corporate officers and employees to testify to industry practices "based upon their particularized knowledge garnered from years of experience within the field").

**Plaintiffs conducted hours of cross-examination of Mr. Thompson that concerns the very testimony stated in his affidavit and that is the subject of their motion to strike.**

In their motion to strike, plaintiffs take issue with Mr. Thompson's affidavit testimony wherein he states that searching title and issuing a title policy is work performed by him as a legal services provider that is within the regular course of his business as a practicing attorney. This affidavit testimony is no surprise to plaintiffs, because their counsel spent several hours deposing Mr. Thompson on this very subject on April 11, 2012.

In that deposition, plaintiffs' counsel asked Mr. Thompson to describe both his standard procedure and experience for searching title and issuing title policies and his understanding that "when you issue title opinions and title policies, you're practicing law." [Deposition of J. Garrison Thompson (doc. 58-2) at 35]. When plaintiffs' counsel asked what his opinion was based on, Mr. Thompson answered: "Forty-nine years of practicing law." [Id.].

Mr. Thompson testified as follows:

> Q: Let's talk about title insurance, how that process in general terms. Tell me what your understanding of an issuing agent is for a title insurance company?
>
> A: An approved attorney by the title company authorizing that attorney to issue title policies, loan policies, and owners' policies, lease-hold policies. They have one called residential policies now.
>
> . . .
>
> Q: So your experience in title insurance has been as an issuing agent?
>
> A: As an approved attorney.

3

Q: Well, I don't want to quibble over the words.[1] But for example, you are personally authorized to sign policies of title insurance for Mississippi Valley and Old Republic and bind the company, is that correct?

A: Only because I'm an attorney.

Q: Now were you also authorized to sign policies and commitments for Lawyers Title Insurance Company?

A: Yes, as an approved attorney for Lawyers Title.

Q: And the same thing for St. Paul?

A: That's correct, as an approved attorney.

Q: All right. So tell me typically - - first of all, has there been any substantial difference in the process that you used to issue policies for Mississippi Valley or Old Republic as opposed to Lawyers Title or St. Paul Title?

A: I don't think of any significant difference. The procedure is basically the same.

Q: So tell me what your standard procedure has been from the point in time when somebody would contact your office and say, we're going to do a transaction and we're interested in obtaining some form of title insurance. So we'll call that the title order. So take me forward typically how you guys would handle that from receiving an order.

A. Generally, I would try to determine if they had any existing abstracts of title or other evidence of title, old title policies, old title opinions from other attorneys. Some starting point to begin the title search. And then I would either order an abstract of title or supplemental abstract of title from Dallas County Abstract Company, or I would do a title search myself in the record room of the courthouse. Basically, it's the same procedure as

---

[1] But quibble is exactly what plaintiffs' counsel did, arguing with Mr. Thompson throughout the deposition over his testimony and opinions, and at one point asking Mr. Thompson to recite legal authority to support his contentions. [Deposition of J. Garrison Thompson (doc. 58-2) at 26]. It is indeed perplexing that plaintiffs spent an entire deposition questioning Mr. Thompson's testimony that he acted as an attorney when he searched title and issued title commitments and policies, and then turn around and argue that they had no notice of his testimony and opinions.

<u>writing an attorney's certificate of title or opinion of title.  The procedure is the same as far as the title search is concerned and examining the title.  It's exactly the same.</u>

  Q. So now you've looked at the title, what happens next?

  A. Then you -- all this is on computer now, the title information is. And I tell my secretary what information to put in there, who is the present owner, how much the policy is to be for, the date of the policy, any items that need to be taken care of in order to give a merchantable title, a good title to the property and any exceptions to the title, such as judgments, liens, rights-of-way, those types of things.  All that's printed out on a commitment form that's furnished by the title company.

  Q. And after the commitment is printed, then that's delivered to the proposed insured?

  A. Correct.

  Q. So what is the next step in the process?

  A. Then you have a closing of the transaction.  Generally, if it's a sale transaction, you'll have a deed from the owner to the new purchaser. If it's to be financed by a bank or a mortgage company, then there will be a loan closing and funds will be dispersed.  And finally, the final policies are issued.

  Q. All right.  What do you do before issuing the final policy?

  A. What do you mean?

  Q. All right.  Well, you have a commitment and it has requirements, which commit the company to issue a final policy when the requirements are satisfied.  So what takes place between the commitment, and then, there's a closing, and then, how does your office decide whether or not to issue the final policy?

  A. As a general rule, we would examine the records again at the time of the recording of the instruments.

  Q. And the date of the final policy is typically what?

  A. The date of the filing, the deed or mortgage, whatever is being insured.

. . .

Q: All right. In other words, do you agree that, as a matter of law in Alabama, a title insurance policy is not a representation as to the actual state of title as distinguished from an abstract or an attorney's opinion?

A: I don't know. I think when someone receives a title policy, they're accepting it as an opinion on the state of title. Is that your question?

Q: Yes. So you think - - your personal view is that a title insurance policy can be some form of opinion on the state of title?

A: Certainly, it's based on an attorney's opinion.

Q: Do you have any legal authorities to support that contention?

A: <u>I just know that when I issue a title policy, I'm practicing law and I'm issuing that policy as an attorney engaged in the practice of law.</u>

. . .

Q: Is there anything in there [section 27-25-4 of the Title Insurance Act] that requires a title insurance agent to also be licensed as an attorney at law?

A: Yes. The statute says what it says. <u>I just  - - you know, I personally don't see how you can divorce being an attorney at law an issuing agent. Everything - - you know, we learned to do abstracts in law school. And throughout my legal practice, I've always considered issuing a title policy a part of my law practice. I do it as an attorney, as a lawyer. I don't consider myself a title agent.</u>

. . .

Q: Are you aware of anything in the Alabama Code to contradict that statement to the effect that someone who is not licensed by the insurance commissioner can issue title insurance in Alabama?

A: <u>I think even the most skilled real estate lawyer that you refer to would not be a title agent or agent to issue, an approved attorney to issue title insurance, unless he were a licensed attorney. That's been my experience.</u>

      Q:   But my specific question is: Without the piece of paper that's been marked as Plaintiff's Exhibit 4 be in existence somewhere, a person may not issue commitments or policies of title insurance in Alabama?

      A:   Apparently so.  But - - <u>you're only going to issue those title policies in your capacity as an attorney, practicing law.  That's what you're doing.  When you issue title opinions and title policies, you're practicing law. You're practicing real estate law.</u>

      Q:   <u>Okay.  Now, Mr. Thompson, I understand that that's your opinion, and I'm not saying you're not entitled to have an opinion, but and you - - what is that opinion based on?</u>

      A:   <u>Forty-nine years of practicing law.</u>

. . .

      Q:   Let's talk about what happened with Marion Bank and the Rabbs.  This should be a copy of documents that you produced.  I'm sorry it's not in really good chronological order.  Before I start asking you about the series of documents, <u>when you are working for Mississippi Valley as a title insurance agent and issuing their policies, what do you consider to be your obligations to Mississippi Valley?</u>

      A:   <u>Same as my obligation as an attorney to any client, the same standard of care.</u>

. . .

      Q:   Okay.  Well you understand that when you place a risk for Mississippi Valley or Old Republic, as an issuing agent, you have to minimize the risk that the title you're issuing is bad?

      A:   You do as an attorney, sure.

      Q:   And to do that, you have to go back and look or have somebody look at the real property records?

      A:   As an attorney, yes.

[Deposition of J. Garrison Thompson (doc. 58-2) at 17, 18- 2, 24-25, 30-31, 34-35, 43, 79 (emphasis added)].

In his affidavit, Mr. Thompson simply explains what he does in the performance of legal services prerequisite to the issuance of title insurance. This was, as shown above, the subject of extensive questioning by plaintiffs' counsel at Mr. Thompson's deposition. Mr. Thompson's affidavit testimony further explains that he has always considered searching title and issuing title policies to be part of his law practice. Again, as shown above, this was the subject of extensive questioning by plaintiffs' counsel at the deposition. Plaintiffs cannot seriously now claim that Mr. Thompson's explanations of what he does, and his opinion that what he does is part of his law practice, was not known to plaintiffs and their counsel after they concluded Mr. Thompson's deposition on April 11, 2012.

**Mr. Thompson's affidavit testimony lies comfortably within the ambit of Rule 701.**

Rule 701 allows a witness who is not testifying as an expert to give testimony in the form of an opinion that is (a) rationally based on the witness's perception, (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Here, Mr. Thompson's affidavit testimony is rationally based on his personal knowledge and familiarity with the standard procedures that he followed in his office and what he, as a lawyer under contract with Mississippi Valley, was required to do when he searched title and issued title commitments and policies.

Further, it is Mr. Thompson's familiarity with the process, what he was required to do, and how he went about doing the required work - - knowledge which he has

8

garnered through his forty-nine years of lawyering - - that is helpful to a clear understanding of his testimony and to determining the facts at issue.  *See Tampa Bay Shipbuilding*, 320 F.3d at 1217-23.  This was all the subject of extensive questioning by plaintiffs' counsel when they took Mr. Thompson's deposition.

And finally, Mr. Thompson's explanation of the title search and title policy process and how he went about doing that work, as well as his opinion that searching title and issuing title policies is something that he does as a lawyer and as part of his law practice, does not require resort to scientific, technical, or other specialized knowledge within the scope of Rule 702.  Plaintiffs contracted with Mr. Thompson because he is a lawyer, and denominated him as their "attorney agent."  In response to this lawsuit, Mr. Thompson answered that he acted at all times in his capacity as a legal service provider, and plaintiffs' counsel questioned Mr. Thompson at length at the deposition concerning this position.  Mr. Thompson's answers at the deposition did not require use of scientific, technical, or other specialized knowledge within the scope of Rule 702.  And his affidavit testimony likewise does not require any such scientific, technical, or other specialized knowledge within the scope of Rule 702.

**Thompson's Affidavit.**

Plaintiffs seek to have the Court strike the following portions of Mr. Thompson's affidavit:

> 1.   "This requirement, and my performance of the services prerequisite to the issuance of title insurance, necessitates that I perform a title search, analyze the documents in the chain of title, draw conclusions from those documents, and formulate an opinion as to the status of title and how the documents in the chain of title affect record title to the property."

2.  "These tasks, and the issuance of commitments and policies, require me to perform legal services and to form opinions based upon my legal education, training, and experience."

3.  "In my experience, each real estate transaction and application for title insurance presents a different set of circumstances with respect to the status of title and characteristics of each property, which require me to apply both my legal judgment as an attorney based upon my legal education, training, and experience, and my underwriting judgment based upon the published underwriting guidelines of Mississippi Valley Title Insurance Company."[2]

4.  "Searching title, and drawing the conclusions necessary to formulate an opinion concerning the status of title, requires me to utilize my legal education, training, and experience. I have always considered the searching of title and issuance of title policies as being a part of my law practice, and I take note of the fact that the rendering of a title opinion is considered the practice of law by the Alabama Supreme Court."[3]

5.  "The work performed by me in searching title to the Rabbs' property as well as the work performed in issuing the policy was performed by me as a legal service provider. This work was done in the regular course of my business as a practicing attorney."

6.  "The work performed by me in connection with this 2003 transaction was performed by me as a legal service provider. This work was done in the regular course of my business as a practicing attorney."

Each of these sentences is a factual description of what Mr. Thompson does and how he goes about doing it when he searches title and formulates the requisite opinions

---

[2] A Memorandum issued by Mississippi Valley on September 27, 2001, contains the following statement: "The use of these forms in no way changes the basic title examination and certification which you have been performing in the past. Each individual application presents a different set of circumstances with respect to the status of the title and characteristics of each property to which you are to apply your usual underwriting judgment." [Exhibit "A"].

[3] Mississippi Valley's contract and underwriting standards require attorney opinions and certifications. [See Contract (doc. 52-3) at ¶ 3; Agent's Manual (doc. 52-4)]. The Memorandum referred to in footnote 2 shows that the basic title examination and certification which attorney agents "have been performing in the past" remained unchanged as of September 27, 2001.

to be drawn from the documents in the chain of title.  This is not opinion testimony, but if it can be characterized as opinion testimony it lies comfortably within the ambit of Rule 701.  *See Tampa Bay Shipbuilding*, 320 F.3d at 1217-23.  Plaintiffs have failed to show otherwise, and their motion to strike is due to be denied.

Therefore, based on the foregoing, the defendant J. Garrison Thompson moves the Court to deny plaintiffs' motion to strike.

        Respectfully submitted,


/s/ JAMES B. ROSSLER
JAMES B. ROSSLER
P.O. Drawer 2164
Mobile, Alabama 36652
251-432-2300


### CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September, 2012, I filed the foregoing **Opposition to Plaintiffs' Motion to Strike** with the Clerk of the Court using the CM/ECF System, which will send notice of this filing to:

    Charles C. Simpson, III
    Lawrence J. Seiter
    Johnstone, Adams, Bailey, Gordon & Harris, LLC
    P.O. Box 1988
    Mobile, Alabama 36633

    Allen S. Reeves
    B. Kincey Green, Jr.
    Reeves & Stewart, P.C.
    P.O. Box 447
    Selma, Alabama 36702

        /s/ James B. Rossler